## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: ) | | Bankruptcy Case No. |
| ARTHUR JAMES REEVES, ) | | 09-23389-SBB |
| Debtor. ) | | Chapter 7 |
| _____ ) | | |
| ) | | |
| LAWRENCE RAYNER and ) | | |
| SALLY RAYNER, ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | Adversary Proceeding No. |
| ) | | 09-01611-SBB |
| ARTHUR JAMES REEVES, ) | | |
| Defendant. ) | | |

### CORRECTED[1] MEMORANDUM OPINION AND ORDER (1) GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT FILED ON DECEMBER 27, 2010; (2) DENYING DEFENDANT'S CROSS- MOTION FOR SUMMARY JUDGMENT (DOCKET #32)

THIS MATTER comes before the Court on the Motion for Summary Judgment filed by the Plaintiffs, Lawrence Rayner and Sally Rayner ("Plaintiffs') on December 27, 2010,[2] the Response thereto filed by Defendant, Arthur James Reeves ("Defendant"), on January 31, 2011,[3] and the Plaintiffs' Response to Cross-Motion for Summary Judgment on Plaintiffs' Third and Fourth Claims for Relief filed on February 15, 2011.[4]  The Court, having reviewed the pleadings, the exhibits attached thereto, and the within case file, makes the following findings of fact, conclusions of law, and enters the following Order.

**I.      Summary**

This adversary proceeding arises from the product of more than ten years of litigation

---

[1]      This Order corrects the language in the last sentence of the last paragraph of section V.C on page 11 of the Court's June 3, 2011 Order.  Reference was erroneously made to 11 U.S.C. § 523(a)(4).  Reference should be made to 11 U.S.C. § 523(a)(2)(A).  The Order is identical in all other respects.  The entry of *this* Order correcting the trivial typicagraphical error on the eleventh page of a twelve-page opinion does not amend the substance of the Order and does not serve to extend the appeal deadlines.  *See, e.g., United States v. Motor Freight Express, Inc.,* 94 B.R. 346, 347 (E.D. Pa. 1988).

[2]      Docket #28.

[3]      Docket #32.  This Response is both a response and a cross-motion for summary judgment on the Plaintiffs' Third and Fourth Claims for Relief.

[4]      Docket #33.

between the Plaintiffs and Defendant, which included multiple proceedings before Wisconsin trial courts and cross-appeals to the Wisconsin Court of Appeals. This Court previously granted summary judgment in favor of the Plaintiffs on their claim that Defendant's criminal restitution in the sum of $78,692.00 was not dischargeable.

The Plaintiffs, by way of the pending Motion for Summary Judgment, now seek summary judgment that a prior $100,000 judgment entered in favor of Plaintiffs and against the Defendant in a Wisconsin trial court is not dischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6) because the $100,000 judgment is the debt resulting from Defendant's false testimony to a Wisconsin trial court in 2006 to induce the Plaintiffs to dismiss a civil case against Defendant, which judgment was upheld by the Wisconsin Court of Appeals in October, 2010.

## II.     Background

The Plaintiffs entered into an agreement with Reeves Custom Builders, Inc. ("RCB") for remodeling work on the Plaintiffs' house located in Lake Geneva, Wisconsin. A dispute arose between the Plaintiffs and RCB, and in 2001, the Plaintiffs sued Reeves Custom Builders, Inc. and Defendant, who, with his wife, owned the 100% owner of RCB, in Wisconsin state court (the "Wisconsin Case"). Among other claims, the Plaintiffs alleged that RCB breached the agreement and that Defendant violated the Home Improvement Practices Act, which makes certain conduct by contractors fraudulent.

In late 2005, Defendant informed the Plaintiffs that he had no ability to pay a judgment. In January, 2006, the Plaintiffs and Defendant stipulated to the dismissal of the Wisconsin Case, expressly dependent upon the truthfulness of Defendant's representations that: (1) that he did not have total assets whose fair market value exceeded $25,000.00; (2) that he had not transferred any assets outside the ordinary course of business or for less than fair market value since 2001; and (3) that he did not know any person involved in the purchase of a house and five acres of land in Wisconsin that Defendant had sold. The stipulation provided that if any of Defendant's representations were false, the Plaintiffs would be entitled to a judgment in the amount of $100,000.00 (the "Stipulation").

On January 23, 2006, the Wisconsin Trial Court conducted a hearing at which Defendant testified extensively, *under oath*, about his assets and asset transfers. The Plaintiffs later discovered that Defendant's testimony at the hearing was false. Specifically, the Plaintiffs discovered that Defendant sold real property worth more than $50,000.00 to his parent's trust for a purchase price of $10,000.00, and that Defendant concealed his brother-in-law's involvement in the purchase of Defendant's house. As demonstrated below, Defendant lied under oath when questioned about those topics. On June 8, 2007, the Wisconsin Trial Court granted the Plaintiffs' motion for a judgment, determined that Defendant's testimony and his representations were false and entered judgment for the Plaintiffs and against Defendant in the stipulated amount of $100,000.00 (the "$100,000 Judgment").

## III.    Factual Findings

The following factual findings are those culled from the pleadings, which this Court concludes are not genuinely at issue.

### A. Background of this Case[5]

1. On October 8, 2009, Defendant filed a Motion for Relief from Stay in his bankruptcy case to continue to prosecute an appeal of the $100,000 Judgment.[6]

2. Plaintiffs filed their complaint to commence this adversary proceeding on October 9, 2009.

3. On November 3, 2009, the Plaintiffs filed an objection to Defendant's Motion for Relief from stay.[7]

4. On November 9, 2009, Defendant filed his Answer to the Complaint.[8]

5. On November 10, 2009, this Court granted Defendant's Motion for Relief from Stay, allowing Defendant and the Plaintiffs to prosecute their cross-appeals in the Wisconsin Court of Appeals.[9]

6. On December 18, 2009, the Plaintiffs filed a Motion for Summary Judgment[10] on the Plaintiffs' claim for non-dischargeability of a criminal restitution order against Defendant, which this Court granted on February 16, 2010.[11]

7. On April 2, 2010, the Plaintiffs filed a status report on the progress of the cross-

---

[5] The Defendant does not refute the Plaintiffs' recitation of the case history here presented and, therefore, this Court includes the same verbatim with only stylistic and minor grammatical changes. Under the prior FED.R.CIV.P. 56(d)(1), and as a practice of this Court, this Court generally sets forth in its orders on summary judgment, *to the extent possible*, those material facts which are not genuinely at issue and those genuine facts which remain at issue. The Court does so in order to winnow the factual questions for hearing or trial at a later date.

[6] Docket No. 24 in the underlying bankruptcy case, Case No. 09-23389.

[7] Docket No. 24 in the underlying bankruptcy case, Case No. 09-23389.

[8] Docket No. 7 in this adversary proceeding.

[9] Docket No. 32 in this adversary proceeding.

[10] Docket No. 12.

[11] Docket No. 20 in this adversary proceeding.

3

appeals pending in the Wisconsin Court of Appeals.[12]

8. On October 13, 2010, the Wisconsin Court of Appeals issued an order on cross-appeals of orders entered by the Wisconsin Trial Court.[13] In that order, the Wisconsin Court of Appeals affirmed the $100,000 judgment against Defendant.[14]

**B. Factual Findings**[15]

1. Plaintiffs commenced the Wisconsin Case against RCB and Defendant in 2001.[16]

2. In 2005, Defendant informed the Plaintiffs and the Wisconsin Trial Court that he had no money or property from which to collect a judgment if the Plaintiffs were successful in the Wisconsin Case.[17]

3. The Plaintiffs agreed to dismiss the Wisconsin Case upon verification of Defendant's assets and previous financial transactions.[18]

4. Plaintiffs and Defendant stipulated to the dismissal of the Wisconsin Case on January 23, 2006.[19]

5. The Stipulation was expressly dependent on the accuracy of certain

---

[12] Docket No. 27 in this adversary proceeding.

[13] *Rayner v. Reeves Custom Builders, Inc.*, 2008 AP 3160, 2010 WL 3984679 (Wis. App. Oct. 13, 2010).

[14] *Id.*

[15] The Factual Findings contained in this section are premised on those stated in the Plaintiffs' Motion for Summary Judgment which do not appear to be genuinely in dispute.

[16] Ex. C to Plaintiff's Motion for Summary Judgment, Declarations of L. Rayner and S. Rayner, at ¶1; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶10; and Defendant's Response to Statement of Undisputed Facts, at ¶10.

[17] Ex. C to Plaintiff's Motion for Summary Judgment, Declarations of L. Rayner and S. Rayner, at ¶2; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶11; and Defendant's Response to Statement of Undisputed Facts, at ¶11.

[18] Ex. C to Plaintiff's Motion for Summary Judgment, Declarations of L. Rayner and S. Rayner, at ¶3; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶12; and Defendant's Response to Statement of Undisputed Facts, at ¶12.

[19] Ex. A to Plaintiff's Motion for Summary Judgment, Order for Judgment, at 1; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶13; and Defendant's Response to Statement of Undisputed Facts, at ¶13.

representations Defendant made to the Plaintiffs under oath, in court.[20]

6.     Defendant testified under oath about his assets and asset transfers at a hearing conducted in the Wisconsin Trial Court on January 23, 2006.[21]

7.     The Plaintiffs' attorney cross examined Defendant about Defendant's assets and asset transfers.[22]

8.     At the hearing, Defendant testified that he had not transferred any assets outside the normal course of business or for less than fair market value since 2001 when the civil case began.[23]

9.     In fact, 2003, Defendant transferred a residential lot located in Fontana, Wisconsin to the Reeves Family Revocable Trust for $10,000.[24]

10.     The fair market value of the lot at the transfer was $52,500.[25]

11.     Defendant also testified that he was not related to any person involved with the purchaser of his principal asset in 2005—five acres of land with a house in Wisconsin he sold for $779,000 (the "House")—and knew the name of only one person involved in the purchase.[26]

---

[20] Ex. A to Plaintiff's Motion for Summary Judgment, Order for Judgment, at 1-2; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶14; and Defendant's Response to Statement of Undisputed Facts, at ¶14.

[21] Ex. B to Plaintiffs' Motion for Summary Judgment, Transcript of January 23, 2006 Hearing; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶15; and Defendant's Response to Statement of Undisputed Facts, at ¶15.

[22] Ex. B to Plaintiffs' Motion for Summary Judgment, Transcript of January 23, 2006 Hearing; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶16; and Defendant's Response to Statement of Undisputed Facts, at ¶16.

[23] Ex. A to Plaintiffs' Motion for Summary Judgment, Order for Judgment, at 2; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶17; and Defendant's Response to Statement of Undisputed Facts, at ¶17.

[24] Ex. A to Plaintiffs' Motion for Summary Judgment, Order for Judgment, at 2; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶18; and Defendant's Response to Statement of Undisputed Facts, at ¶18.

[25] Ex. A to Plaintiffs' Motion for Summary Judgment, Order for Judgment, at 2; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶19; and Defendant's Response to Statement of Undisputed Facts, at ¶19.

[26] Ex. B to Plaintiffs' Motion for Summary Judgment, Transcript of January 23, 2006 Hearing, at 15:6; 48:8 to 48:17; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶20; and

(continued...)

12. In fact, Defendant's brother in law was involved in the entity that purchased the House, and Defendant failed to disclose his brother-in-law's involvement "despite adequate questioning" from the Plaintiffs' attorney.[21]

13. The sale of the House was not handled through a real estate broker.[22]

14. On June 8, 2007, the Wisconsin Trial Court entered the $100,000 Judgment.[22]

### C. Material Facts Which Genuinely Remain at Issue

The Defendant raises factual issues, which he asserts preclude the entry of summary judgment:

First, he contests that the Plaintiffs *relied* on the accuracy of Defendant's testimony and the representations made under oath at the January 23, 2006 hearing about his assets and asset transfers in entering into the Stipulation.

Second, the Defendant contests that Plaintiffs would not have entered into the Stipulation had they known Defendant's representations about his assets and assets transfers were false.

Third, the Defendant contends that the Plaintiffs did not suffer a loss. That is, the Wisconsin Trial Court awarded the Plaintiffs zero damages on their trust fund claims and this verdict was affirmed on appeal.

As discussed below, the *Johnson v. Riebesell (In re Riebesell)* case lineage[23] gives this Court guidance in the determination of the issue herein. As was recognized in *Riebesell*, "justifiable reliance" is an examination of the qualities and characteristics of a particular case. The facts of this case reflect a distrust between the parties. This distrust culminated in the entry

---

[26](...continued)
Defendant's Response to Statement of Undisputed Facts, at ¶20.

[21] Ex. A to the Plaintiffs' Motion for Summary Judgment, Order for Judgment, at 2; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶21; and Defendant's Response to Statement of Undisputed Facts, at ¶21.

[22] Ex. B to the Plaintiffs' Motion for Summary Judgment, Transcript of January 23, 2006 Hearing, at 49:5 to 49:18; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶22; and Defendant's Response to Statement of Undisputed Facts, at ¶22.

[22] Ex. D to the Plaintiffs' Motion for Summary Judgment; Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Facts, at ¶25; and Defendant's Response to Statement of Undisputed Facts, at ¶25.

[23] This case originated before this Court (399 B.R. 830 (Bankr. D.Colo. 2008)) and was appealed to the Tenth Circuit BAP (407 B.R. 443 (10 th Cir. BAP 2009)), and it was then subsequently appealed to the Tenth Circuit (586 F.3d 782 (10th Cir. 2009)).

of the Stipulation. Contrary to the Defendant's assertions, the Stipulation was entered into with a safety net for the Plaintiff in the event that the Defendant was making false representations so as to induce the entry of a Stipulation.

### IV. Standard for Summary Judgment

Summary judgment is to be granted under FED.R.CIV.P. 56(a) if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] The moving party bears the initial burden of making a *prima facie* demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[23] When considering a motion for summary judgment, a court views the evidence and draws "reasonable inferences therefrom in the light most favorable to the nonmoving party."[23]

### V. Discussion

#### A. Issue Preclusion

The Plaintiffs assert that the Defendant is precluded from re-litigating this matter here because of issue preclusion. This Court must apply the law of the jurisdiction from which the judgment originated—here, Wisconsin.[24] Under Wisconsin law, the elements of issue preclusion are: (1) a valid, final judgment; (2) identity of issues; (3) privity of parties; and (4) issues which have been litigated and necessarily determined.[25]

Here, the Wisconsin Trial Court found that the Stipulation to dismiss the Civil Case was dependent on the accuracy of the representations of the Defendant. The Wisconsin Trial Court found that the Defendant misrepresented that: (1) he did not have total assets whose fair market value exceeded $25,000; (2) that he had not transferred any assets outside the ordinary course of business since 2001; and (3) that he was not related to any person involved in the purchase of a house and five acres of land in Wisconsin that Defendant sold.

---

[24] The Plaintiff cites to an older version of FED.R.CIV.P. 56(c), per the amendments, this section is now FED.R.CIV.P. 56(a). *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288 (10th Cir. 1991).

[23] *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000).

[23] *Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1169 (10th Cir. 2010).

[24] *See In re Shore,* 317 B.R. 536, 541 (10 th Cir. BAP 2004).

[25] *Village of Westfield v. Mashek,* 1994 WL 627504, at *2 (Wis. App. Nov. 109, 1994).

The question before this Court is whether the $100,000 Judgment should be granted issue preclusive effect in the context of this Complaint brought, in part, under 11 U.S.C. 523(a)(2)(A).[26] That section of the Bankruptcy Code provides that:

> "[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...

The parties agree that the elements that must be demonstrated for a claim to be nondischargeable under 11 U.S.C. § 523(a)(2)(A) are:

(1) the debtor made a false representation;
(2) the debtor made the representation with the intent to deceive the creditor;
(3) the creditor relied on the representation;
(4) the creditor's reliance was justifiable; and
(5) the debtor's representation caused the creditor to sustain a loss.[27]

First, the $100,000 Judgment is final and non-appealable. The issue of whether Defendant has been found to have made *false statements* to induce the Stipulation *has been* adjudicated by the Wisconsin Trial Court—a*nd seemingly agreed to by the Defendant in his*

---

[26] It is not unimportant to note that *buried* in the prayer for relief in the Plaintiffs' original Complaint is a claim under 11 U.S.C. §523(a)(2)(B). Section 523(a)(2)(B) would preclude discharge of a debt ... for money, property, services, or an extension, renewal, or refinancing of creditor to the extent obtained by—
  (B) use of a statement in writing—
    (i) that is materially false;
    (ii) respecting the debtor's or an insider's financial condition;
    (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and
    (iv) that the debtor caused to be made or published with intent to deceive...

Plaintiffs also reference this section in their argument contained in their Reply to the Defendant's Response. This issue is not properly framed before the Court and may arguably be untimely at this point of the proceedings. Also, as presented, there is some confusion produced in the arguments raised as to whether written or oral statements were relied upon.

[27] *Chevy Chase Bank v. Kukuk (In re Kukuk),* 225 B.R. 778, 784 (10th Cir. BAP 1998).

*Response*   Consequently, this Court concludes that issue preclusion is applicable as to the following *Kukuk* elements.

First, it is uncontested by the parties here that the Wisconsin Trial Court held that the Defendant made a *false representation* to the Plaintiffs.

Second, the Defendant made the representation with the *intent to deceive* the Plaintiffs. Moreover, the Wisconsin Trial Court found that the *false* statement was made with the intent to induce the Plaintiffs into the Stipulation.

The Court concludes that three issues, nevertheless, require further examination:

(1)     Whether the Plaintiffs relied on the representation.

(2)     Whether the Plaintiffs *justifiably* relied on the false representations.

(3)     Whether Plaintiffs suffered *injury* based on the false representations.

**B.     Reliance and Justifiable Reliance**

The Defendant does not appear to dispute that the Wisconsin Trial Court found that Reeves had made *false statements*. Moreover, the Defendant does *not* dispute that the Wisconsin State Court of Appeals affirmed that the finding that Reeves had made false statements resulted in the entry of a $100,000 judgment on appeal. The issue raised by the Defendant appears to focus in on whether the Plaintiffs *justifiably* relied on the admitted misrepresentations.

Defendant contends that the Plaintiffs could not possibly have relied upon his misrepresentations and falsehoods made at the January 23, 2006 hearing and, regardless, the Plaintiffs negotiated an extremely favorable term in the event that the statements were, in fact, false—thus, no reliance. In effect, the Defendant asserts in his defense that he is so "incredible" or so unreliable in his veracity that *no* person could rely on *anything* he represented.

The terms of the Stipulation were ostensibly consequential in that Defendant would lose his right to a trial on certain issues and Plaintiffs would be entitled to a judgment against Reeves in the amount of $100,000 in addition to the right to further litigate the case to attempt to obtain treble damages and attorney fees. However, this fact alone does not necessarily negate "justifiable reliance." To the contrary, appropriate safeguards and penalties reflect that reliance was "justifiable."

To satisfy Plaintiff's claim under 11 U.S.C. § 523(a)(2)(A), a creditor must have actually relied on the misrepresentation and the reliance must be "justified." Here, this Court looks to the

*Johnson v. Riebesell (In re Riebesell)* case for guidance.[28] In that case, the Defendant had a long-standing relationship with the Plaintiff. Over time, the parties in the case transacted on numerous occasions. However, this Court noted that as the relationship progressed, the reliance went from justifiable to not justifiable. Specifically, the Tenth Circuit, upon review of the Bankruptcy Court's and Bankruptcy Appellate Panel's Orders in this matter, held:

> In determining whether a creditor's reliance was justifiable, a court should therefore examine "the qualities and characteristics of the particular plaintiff, and the *circumstances of the particular case*, rather than [applying] a community standard of conduct to all cases. Even under the "justifiable" test, however, the plaintiff must "use his senses" and at least make "a cursory examination or investigation" of the facts of the transaction before entering into it." Moreover, this test "does not leave [objective] reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of [objectively] reasonable, the greater the doubt about reliance in fact." In effect, "reasonableness goes to the probability of actual reliance."[29]

As noted by the Tenth Circuit, there is a bit of a sliding scale at times when ascertaining justifiable reliance. That is, at the beginning of a relationship there may be some trust based on the dynamics of the relationship.[29] However, as breakdowns occur in the relationship —trust is broken and credibility is lost—the reliance may no longer be "justifiable." Here, however, the Court finds that, while trust was broken, the Plaintiffs bargained for terms that would account for Defendant's lack of reliability. Trust, in fact, can be increased if penalties for falsehood are included (or increased) under the circumstances.

Although the Wisconsin Trial Court found that the Stipulation was dependent on the accuracy of all of the representations of the Defendant, the terms were procured, at least in part, to protect against potential falsehoods of the Defendant. *The question this Court has is why would those terms be necessary in the Stipulation if there was trust in the relationship or, stated more precisely, if there was "justifiable reliance?"*

This question can be answered by the Supreme Court's ruling in *Field v. Mans*.[30] In that case, the Court held that "justifiable reliance" was not without some limits as a person is:

---

[28] *Johnson v. Riebesell (In re Riebesell),* 586 F.3d 782, 792 (10th Cir. 2009). The Court notes that it was the trial court in this matter. *See Johnson v. Riebesell (In re Riebesell),* 399 B.R. 830 (Bankr.D.Colo. 2008).

[29] *Id.* (Emphasis added).

[29] 399 B.R. at 839.

[30] 516 U.S. 59, 70, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995).

10

> required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown by the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has no experience with horses.[31]

The Supreme Court further concluded that:

> As for the reasonableness of reliance, our reading of the Act does not leave reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact. Naifs may recover, at common law and in bankruptcy but lots of creditors are not all naive. The subjectiveness of justifiability cuts both ways, and reasonableness goes to the probability of actual reliance.[32]

The Wisconsin Trial Court found that the Defendant misrepresented that: (1) he did not have total assets whose fair market value exceeded $25,000; (2) that he had not transferred any assets outside the ordinary course of business since 2001; and (3) that he was not related to any person involved in the purchase of a house and five acres of land in Wisconsin that Defendant sold. The Stipulation was entered into *only after* careful requests for assurance that Defendant was telling the truth about his situation. The Stipulation was crafted *after* deliberation. The Stipulation was crafted with provisions in the event the Defendant was lying. This Court concludes, therefore, that the Stipulation was entered into with "justifiable reliance." Consequently, the Plaintiffs shall prevail on their claim for relief under 11 U.S.C. § 523(a)(2)(A).

### C. 11 U.S.C. §523(a)(6)

Under 11 U.S.C. § 523(a)(6), [a] discharge under section 727 ... does not discharge an individual debtor from any debt —

---

[31] *Id.*

[32] 516 U.S. at 76, 116 S.Ct. at 446.

11

    (6) for willful and malicious injury by the debtor to another entity
    or to the property of another entity.

  The Plaintiffs contend that the judgment should be excepted from discharge because of "willful and malicious injury" by Defendant. However, this Court concludes that this has not been established.[33] The Court believes that there are material facts that remain contested with respect to the "willful and malicious" components such that summary judgment cannot enter as a matter of law. Plaintiff's Motion for Summary Judgment will be DENIED with respect to the Fourth Claim for Relief brought under 11 U.S.C. § 523(a)(6).

## VI.   Order

  IT IS THEREFORE ORDERED that the Motion for Summary Judgment filed by Plaintiffs (Docket #28) is GRANTED with respect to their claim under 11 U.S.C. § 523(a)(2)(A). The Plaintiffs' Motion for Summary Judgment is DENIED with respect to their claim under 11 U.S.C. § 523(a)(6). Because this Court is GRANTING relief under 11 U.S.C. § 523(a)(2)(A), and such relief results in the debt owed by the Defendant to the Plaintiffs being nondischargeable, this Court concludes that this matter is hereby concluded and the Clerk of the Court may close the within adversary proceeding 14 days after entry of this Order.

  IT IS FURTHER ORDERED that the cross-motion for summary judgment, as contained in the Response filed by Defendant (Docket #32) is DENIED.

  Dated this 21st day of June 2011, *nunc pro tunc,* the 3rd day of June, 2011.

                    BY THE COURT:

                     _____
                     Sidney B. Brooks,
                     United States Bankruptcy Judge

---

[33] Since this Court is granting the Plaintiffs' Motion under 11 U.S.C. § 523(a)(2)(A), this issue may not need to be further litigated.